2015 PA Super 191

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GARY ALAN MAUZ | |
| Appellant | No. 2068 EDA 2014 |

Appeal from the Judgment of Sentence June 20, 2014
In the Court of Common Pleas of Bucks County
Criminal Division at No: CP-09-SA-0000956-2013

BEFORE:  BOWES, DONOHUE, and STABILE, JJ.

OPINION BY STABILE, J.:                    **FILED SEPTEMBER 09, 2015**

Appellant, Gary Alan Mauz, appeals from the trial court's June 20, 2014 judgment of sentence imposing a $50 fine and court costs. After careful review, we vacate the judgment of sentence.

Police cited Appellant on April 25, 2013 for disorderly conduct (using obscene language and creating a hazardous or physically offensive condition[1]) based on an encounter between Appellant and his neighbor, Victoria Battistini ("Battistini") the previous day. The trial court summarized the pertinent facts:

> At the *de novo* trial, [Battistini], testified that on April 24, 2013, at approximately 10:00 p.m., she was present at her home located at 882 Euclid Avenue, Warrington, Bucks County.

---

[1]  18 Pa.C.S.A. § 5503(a)(3) and (4).

At that time, she was setting up a fire in a fire pit in her backyard with her boyfriend and his two brothers. She noticed noises on the outside of the fence surrounding her residence and, as a result, she walked over to investigate. She relayed that her neighbor, [Appellant], was walking over towards his residence uttering words that were initially unclear. She recalled:

> I couldn't really understand what exactly he was saying, but I know that it was some language … calling me like a whore and stuff. And I kind of–I didn't really know what was going on, and I went to … walk over. By the time I got over to the fence, I had saw [sic] the figure walking up to the house that was my neighbors that live diagonal. Then I recognized who it was…

Because of lights on her back porch and a light post by [Appellant's] front door, she was able to clearly view [Appellant] initially walking towards his residence, then standing at the front door of his residence over her fence, which was diagonal from her own residence. [Appellant] repeatedly directed statements toward [Battistini] such as [Battistini's] "fat mom humps [her] dog" and "whore." Furthermore, she stated that the statements made her feel "uncomfortable and scared" and this was exacerbated by the fact that her mother was on vacation and she was home alone.

Trial Court Opinion, 9/20/14, at 2-3 (record citations omitted).

Appellant pled guilty to disorderly conduct under § 5503(a)(3) (obscene language or gesture) before a Magisterial District Judge on October 29, 2013. Appellant filed a timely summary appeal on November 26, 2013, and the trial court conducted a *de novo* trial on June 20, 2014. The trial court, sitting as finder of fact, found Appellant guilty under § 5503(a)(4) (hazardous or physically offensive condition) as a summary offense, and imposed sentence as set forth above. This timely appeal followed.

Appellant argues the Commonwealth produced insufficient evidence to sustain a conviction under § 5503(a)(4). The following standard governs our review of a challenge to the sufficiency of the evidence:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

**Commonwealth v. Rahman**, 75 A.3d 497, 500-01 (Pa. Super. 2013).

Section 5503 reads:

§ 5503. Disorderly conduct.

> (a) Offense defined. --A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

> […]

> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

> […]

> (c) Definition. --As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

18 Pa.C.S.A. § 5503(a)(4), (c).

"The offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all the irritations which breed in the ferment of a community." *Commonwealth v. Maerz*, 879 A.2d 1267, 1269 (Pa. Super. 2005) (quoting *Commonwealth v. Hock*, 728 A.2d 943, 947 (Pa. 1999)). "It has a specific purpose; it has a definite objective, it is intended to preserve the **public** peace." *Id.* (emphasis added). Indeed, our courts have repeatedly emphasized that the goal of § 5503 is to protect the public. *Commonwealth v. Fedorek*, 946 A.2d 93, 100 (Pa. 2008) ("Certainly, Section 5503 is aimed at protecting the public from certain enumerated acts."); *Hock*, 728 A.2d at 946 ("The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder.").

In *Commonwealth v. Forrey*, 108 A.3d 895 (Pa. Super. 2015), for example, the defendant cussed at police officers while no one else was present. *Id.* at 897. The record reflected only that one officer could hear the defendant's remarks from ten feet away. *Id.* Therefore, the defendant could not have created unreasonable noise (per § 5503(a)(2)) because no member of the public was present to hear it. *Id.* at 899. Likewise, in *Maerz*, the defendant yelled obscenities across the street at a neighbor she believed was shining a flashlight into her home. *Maerz*, 879 A.2d at 1268.

We concluded the defendant's action did not jeopardize "the public peace." *Id.* at 1271. "[The defendant's] single outburst was brief, was only as loud as a person of her presumably ordinary physical abilities can shout, occurred in the evening prior to ordinary sleeping hours, and prompted neither civil unrest nor a single neighbor to seek police intervention." *Id.* In making statements that were "briefly irritating", the defendant did not commit disorderly conduct. *Id.*

On the other hand, in *Commonwealth v. Roth*, 531 A.2d 1133 (Pa. Super. 1987), *appeal denied*, 541 A.2d 1137 (Pa. 1988), this Court held that the defendants, in threating to enter a church during a worship service and dump scrap iron on an altar, acted with intent to cause public annoyance, inconvenience, or alarm. *Id.* at 1136-37. "The occurrences of that day were steeped in an emotionally charged atmosphere. … Those who attended were frightened for their safety as well as for the welfare of the young and elderly members present." *Id.* at 1137.

Concerning § 5503(a)(4), a "'hazardous condition' is a condition that involves danger or risk." *Commonwealth v. Williams*, 574 A.2d 1161, 1164 (Pa. Super. 1990). "The dangers and risks against which the disorderly conduct statute are directed are the possibility of injuries resulting from public disorders." *Id.* In *Williams*, this Court held the defendant did not create a hazardous condition by walking silently through a parking lot in his underwear. *Id.* "His conduct was neither boisterous nor confrontational.

- 5 -

He did not threaten any residents of the apartment house." *Id.* The defendant committed only a "minor act of vandalism" on a car in the parking lot. *Id.*

In contrast, the defendants in *Roth* created a hazardous condition because altercations could have occurred. *Roth*, 531 A.2d at 1137. A physically offensive condition, within the meaning of § 5503(a)(4), "encompasses direct assaults on the physical senses of members of the public." *Williams*, 574 A.2d at 1164. "A defendant may create such a condition if she sets off a 'stink bomb', strews rotting garbage in public places, or shines blinding lights in the eyes of others." *Id.* Likewise, a physically offensive condition can occur where the defendant invades the physical privacy of the victim. *Id.* (citing *Commonwealth v. Young*, 535 A.2d 1141 (Pa. Super. 1988) (holding that two male defendants created a physically offensive condition by entering a bathroom stall and confronting a woman sitting on a toilet), *appeal denied*, 544 A.2d 961 (Pa. 1988)). The *Williams* Court concluded the defendant did not create a physically offensive condition even though one person observed him walking through the parking lot in his underwear. *Id.* at 1165.

Our review of the instant record reveals the following. Appellant was in his yard when he shouted the obscene remarks to Battistini, who was in her yard at the time with her boyfriend and several other people. N.T. Trial, 6/20/14, at 13-16, 21. A five or six foot high fence separated the two

properties. *Id.* at 14. The record does not reflect that anyone other than Battistini heard Appellant's remarks,[2] nor does the record reflect that Appellant's remarks could have reached anyone not present in the yard of Battistini or Appellant.

Since the both the speaker and recipient of the offensive remarks were present in respective private yards, we believe the evidence is insufficient to establish that Appellant acted with the intent to cause **public** annoyance, inconvenience or alarm. *Cf. Young*, 535 A.2d at 1142-43 (holding a dormitory restroom that served fifty female students and their guests was a public place despite the presence of only the perpetrators and the victim at the time of the offense). We cannot conclude Appellant acted with the intent to create public annoyance when he made his offensive remarks in a private setting and the remarks apparently were discernible only to Battistini.

Furthermore, we do not believe Appellant recklessly created a risk of a hazardous or physically offensive condition under § 5503(a)(4). Appellant's conduct created no risk of "injuries resulting from public disorders." *Williams*, 574 A.2d at 1164. Here, Appellant made a few brief, offensive remarks to Battistini and then retreated into his home. The two were separated by a fence, and the record fails to reflect that anyone else heard

---

[2] The Commonwealth's only witnesses were Battistini and the investigating police officer.

- 7 -

Appellant's statements. The encounter ended only seconds after it began. N.T. Trial, 6/20/14, at 24-26.

We also do not believe Appellant's conduct created a physically offensive condition, as Appellant did not engage in a direct assault on Battistini's physical senses, as described in *Williams*. *Williams*, 574 A.2d at 1164. The *Williams* Court described offensive odors or blinding light as examples of physically hazardous conditions. Appellant also did not invade Battistini's physical privacy, as the encounter occurred when she was present in her yard and visible to Appellant from his own yard.

Here, Appellant's conduct implicates only Battistini's sense of sound. We therefore turn to *Maerz* and *Forrey* for persuasive authority, as those cases were decided under § 5503(a)(2) ("unreasonable noise"). 18 Pa.C.S.A. § 5503(a)(2). In *Maerz*, the defendant shouted across the street at her neighbor: "you goddamn motherfucking son of a bitch, what the hell are you doing, get that light off my house[.]" *Maerz*, 879 A.2d at 1268. As noted above, the *Maerz* Court found the evidence insufficient because, among other things, the outburst was brief and did not cause a disturbance or "upset the public peace." *Id.* at 1271. In *Forrey*, the defendant shouted: "all you fucking cops are communists just like Obama," and "this fucking country sucks," and "you better watch your back." *Forrey*, 108 A.3d at 897. The Commonwealth failed to prove the defendant created a level of noise inconsistent with neighborhood standards, especially since the

defendant uttered the remarks in a remote location. *Id.* at 898. Similarly, in the instant case, Appellant's remarks were brief and did not cause public unrest or create a risk thereof. We therefore conclude the record does not contain sufficient evidence to support a finding that Appellant created a physically offensive condition.[3]

For all of the foregoing reasons, we conclude the record, read in a light most favorable to the Commonwealth, does not contain sufficient evidence to support Appellant's conviction under § 5503(a)(4).[4] We therefore vacate the judgment of sentence.

Judgment of sentence vacated.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2015

---

[3] In reaching this decision, we certainly do not condone Appellant's behavior. We find Appellant's comments reprehensible but not criminal.

[4] Appellant argues the trial court erred in permitting the Commonwealth to proceed under § 5503(a)(4), rather than § 5503(a)(3), to which Appellant pled guilty at the summary hearing. Given our disposition, we need not address this argument.